☑ Original    ☐ Dupl


**CLERK'S OFFICE**
**A TRUE COPY**
**May 12, 2026**
**s/ MMK**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1356 S. 57th Street, West Allis, WI 53214; and<br>Person of Richard Fay (DOB XX/XX/1979) | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | Case No.    26-MJ-81 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____05/26/2026_____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable William E. Duffin_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____05/12/2026 at 10:15 a.m._____

*William E. Duffin*
*Judge's signature*

City and state:    _____Milwaukee, WI_____    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

a. The premises located at **1356 S. 57th Street, West Allis, WI 53214,** more fully described as a two-story, two-family residence with red brick. The front door is accessed by brick and paved steps. The numerals "1354" appear in black lettering above the mailbox directly south of the front south door. The numerals "1356" appear above a white mailbox on the southwest corner of the residence facing the street. The entrance door for 1356 is at the rear of the house accessible by a paved walkway on the south side of the residence. A detached garage is located on the alley behind the residence. The search is to include any outbuildings or garages associated with 1356 S. 57th Street, West Allis, WI.

b. The silver Chevy Impala bearing WI license plate ALU2445, and VIN 2G1WB58KX69416782.

c. The person of Richard FAY.

# ATTACHMENT B

## Particular Things to be Seized

1. All records, documents, evidence, and information relating to violations of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Section 841(a)(1) involving Richard FAY, and others known and unknown, including, but not limited to, the following:

    a. Firearms, firearm boxes, bipods, tripods, upper receivers, firearms accessories, and ammunition;

    b. Receipts and records related to the purchase or sales of firearms, firearms accessories, and ammunition;

    c. Controlled substances;

    d. Paraphernalia associated with the manufacture and distribution of controlled substances, including scales, measuring devices, weighing devices, packaging materials, and containers, bags, or boxes to hold or transport controlled substances;

    e. Proceeds of drug trafficking activities, such as currency, crypto currency (in any format, including but not limited to wallets (digital and paper), public keys (addresses), private keys, and recovery seeds), precious metals, financial instruments, jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of drug trafficking activities;

    f. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances;

    e. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, or times when controlled substances were obtained, transferred, sold, distributed, or concealed;

    f. Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, documents and other items or lists

2

reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

g.      Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities;

h.      Records and information related to travel for purposes of drug trafficking, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel, and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel;

i.      Indicia of occupancy, residency, or ownership of the premises and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease, or rental agreements, addressed envelopes, escrow documents, and keys;

j.      Photographs, videotapes, or other records of assets, co-conspirators, or controlled substances;

k.      Cellular telephones, text messaging systems, desktop computers, laptop computers, tablets, other communication devices, and electronic storage devices (including but not limited to thumb drives, compact discs, DVDs, floppy discs, external hard drive, surveillance cameras, security devices, and security systems), and any and all records associated with and stored within such communications services or storage devices;

l.      Records and information relating to a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance;

m.      Records and information relating to the distribution, manufacture, dispensing, or possession with the intent to manufacture, distribute, or dispense a controlled substance;

n.      Records and information relating to the identity or location of the subjects listed above;

o.      Records and information about customers, including lists of customers and related identifying information;

p.      Records and information relating to the types, amounts, and prices of drugs imported, trafficked, and distributed as well as dates, places, and amounts of specific transactions; and

3

q.　　　Records and information relating to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

2.　　　Computers or storage media used as a means to commit the violations described above.

3.　　　For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

> a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
>
> b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
>
> c. evidence of the lack of such malicious software;
>
> d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;
>
> e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;
>
> f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;
>
> g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;
>
> h. evidence of the times the COMPUTER was used;
>
> i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;
>
> j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

4

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

5



CLERK'S OFFICE
A TRUE COPY
May 12, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1356 S. 57th Street, West Allis, WI 53214; and<br>Person of Richard Fay (DOB XX/XX/1979) | )<br>)<br>)<br>)<br>)<br>) | Case No.      26-MJ-81 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g)(1) | Felon in Possession of a Firearm |
| 21 USC 841(a)(1) | Possession with intent to distribute controlled substances |

The application is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PAUL KOZELEK ⟩ Digitally signed by PAUL KOZELEK
Date: 2026.05.11 12:47:20 -05'00'

*Applicant's signature*

ATF Special Agent Paul Kozelek

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:      05/12/2026

*William E. Duffin*

*Judge's signature*

City and state:   Milwaukee, WI        Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Special Agent Paul Kozelek, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1. Based on the facts set forth in this affidavit, your affiant believes there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) and 21 U.S.C §§ 841(a)(1) have been committed, are being committed, or will be committed by FAY. There is also probable cause to believe that the location information described in Attachment A will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

2. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

3. This affidavit is submitted in support of an application for a search warrant to seek evidence of 18 U.S.C. §§ 922(g)(1) Prohibited Person in Possession of a Firearm; and 21 U.S.C §§ 841(a)(1) Distribution of a Controlled Substance and for the following property associated with FAY, who has committed, is committing, and will continue to commit the above-listed offenses:

> a. The premises located at **1356 S. 57th Street, West Allis, WI 53214,** more fully described as a two-story, two-family residence with red brick. The front door is accessed by brick and paved steps. The numerals "1354" appear in black lettering above the mailbox directly south of the front south

door. The numerals "1356" appear above a white mailbox on the southwest corner of the residence facing the street. The entrance door for 1356 is at the rear of the house accessible by a paved walkway on the south side of the residence. A detached garage is located on the alley behind the residence. The search is to include any outbuildings or garages associated with 1356 S. 57th Street, West Allis, WI.

b. The person of Richard FAY.

c. The silver Chevy Impala bearing WI license plate ALU2445, with VIN 2G1WB58KX69416782.

4. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January of 2020. Prior to my employment with ATF, I was a Sheriff's Deputy with the Jackson County Sheriff's Office in Black River Falls, WI. My duties included patrol, drafting and executing search warrants, and investigations related to state and county criminal violations. Previous to my tenure with the Jackson County Sheriff's Office, I served with the United State Marine Corps from 2004 until 2008, and the United States Marine Corps Reserve from 2011 until 2014. I left the Marine Corps as an E6/Staff Sergeant holding the billet of Platoon Commander. I received my bachelor's degree in Criminal Justice Administration from Viterbo University, La Crosse, WI in 2016.

5. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

2

6.      I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking. In addition, I have participated in the execution of search warrants in which firearms, ammunition, and controlled substances were seized in violation of state and federal laws.  I know from training and experience that those who commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, and I have knowledge of the use of money laundering to conceal ill-gotten gains.

7.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.      I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking.

3

9. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### Background and Investigation Initiation

11. On January 6, 2026, ATF received an anonymous tip stating Richard A. FAY (M/W DOB XX/XX/1979) (herein FAY) was a convicted felon and in possession of firearms. The following was summary of the anonymous tip, as reported to the ATF's online reporting platform:

> Richard Fay lives on 1356 S 57th and he is a convicted felon that is not supposed to have firearms or access to them. He has multiple fire arms ranging in sizes but mostly 9mm handguns but all of the firearms are registered to his wife Melissa although he is the one that shoots them. He has made many comments of always carrying a gun even though he is not supposed to or he needs to make sure that he has someone else in the car with him so that if he got pulled over he will not be in trouble for having it in the car. I have also heard him personally say that the only good cop is a dead cop on the side of the road and that they should all be gunned or mowed down. He also keeps large amounts of marajuana [sic.] in his house.

12. The anonymous tip stated FAY lived at 1356 S. 57<sup>th</sup>reet Street (in West Allis, WI) (herein **TARGET RESIDENCE**). The tip stated FAY was in possession of multiple firearms, and that they were "registered" to his wife "Melissa", later determined to be Melissa M. FAY (F/N DOB XX/XX/1980) (herein M. FAY). The tip provided a Facebook profile of https://www.facebook.com/rich.fay.73/photos for FAY. FAY was described as driving a Chevy Impala, silver in color bearing WI license plate ALU2445.

13. Your affiant reviewed the criminal history for FAY and found the following prohibitors: (Felony) 8/30/1998 Milwaukee County Circuit Cout Case #1998CF004553 – WI

Statute 939.05 – Discharge Firearm/Vehicle Towards Person; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #2001CM009617 – WI Statute 946.41(1) Resist/Obstruct with 939.62 Habitual Criminality; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #2001CM009617 – WI Statute 941.01 Disorderly Conduct with 939.62 Habitual Criminality; (Misdemeanor punishable by more than 1 year) 3/5/2002 – Milwaukee County Circuit Court case #2001CM009617 – WI Statute 941.01 Disorderly Conduct with 939.62 Habitual Criminality

14. The tip provided several photographs. The first showed a white male with a distinctive face tattoo over one eye taking a "selfie" photo. The male was standing next to a red brick house consistent with **TARGET RESIDENCE.** The male was pointing a Glock pistol at the camera. See figure 1 below. Based on your affiant's training and experience, the markings visible on the pistol along with the rifling visible in the barrel shows the pistol in the photograph is highly likely to be a real firearm. Based on information described below in paragraph 13 and 14, the photo in figure 1 is reversed as FAY's tattoo is above his left eye. Also, your affiant has observed the rear of **TARGET RESIDENCE** and found that the orientation of the grill and the rear door is also reversed in the photo. This along with FAY's body position shows this photo was a "selfie" which would have been taken on his cellular device.

5



(Figure 1)

15.     The second screen shot showed three AR type firearms. A text bubble under the picture said, "New one in the middle". Based on the tip, it was implied that FAY was the one who sent the picture to the tipster, but that hasn't been confirmed due to the fact that the tipster's identity is unknown to law enforcement. *See* Figure 2 below.

6



New one in middle

(Figure 2)

16.     The third screenshot showed a scale with two bowls next to it. The bowls contained similar amounts of a green leafy substance which appeared to be marijuana. Text bubbles under the picture said, "Now that's a sack", and "1k worth". Based on my training and experience, the term "sack" refers to a bag of marijuana.    In addition, the table in the photograph appears consistent with the kitchen table from Richard FAY's residence (**TARGET RESIDENCE)** captured in the body camera footage referenced in Paragraph 23 below and Figure 10 below. *See* Figure 3.

7



(Figure 3)

17.     The fourth screenshot showed two pictures of a Sig Sauer model M17 pistol. A text bubble under the picture said, "Got it this morning dunhams called wife last night see the optic cut I have an optic on Way".   In addition, the white cabinetry in the background of the photographs appears consistent with the cabinets in FAY's kitchen (**TARGET RESIDENCE**) as captured in the body camera footage described in Paragraph 20 and Figure 10 below.  *See* Figure 4.



(Figure 4)

8

18.     Your affiant reviewed the social media account in the tip. Your affiant observed

Facebook page https://www.facebook.com/rich.fay.73/photos. *See* Figure 5. Photos of FAY on

the account matched the male in Figure 1.



(Figure 5)

19.     Your affiant reviewed FAY's Wisconsin driver's license photo, which also showed

a male who was consistent with the male from Figure 1. The records showed a driver's license

issued date of 4/7/2021 and appeared to be taken prior to the distinctive face tattoo.  The driver's

license photograph of FAY, the male in the Facebook page photos, and the male in the photo from

the tip were all consistent and showed the same person. In addition, the address for FAY's driver

license registrations showed 1356 S. 57th Street in West Allis, WI (**TARGET RESIDENCE**).

20.     On January 8, 2026, your affiant contacted Dunham's Sports regarding any firearms

purchases made by M. FAY. Your affiant was informed there were no known purchases by M.

FAY in either her married or maiden name.

9

21. On January 9, 2026, your affiant conducted surveillance at **TARGET RESIDENCE**. Your affiant observed M. FAY walk to the front of the residence from the paved walkway leading from the rear entrance. M. FAY walked north on the sidewalk to a corner store. A short time later M. FAY walked south on S. 57th Street and used the paved walkway to go to the rear entrance of **TARGET RESIDENCE**.

22. On January 22, 2026, your affiant conducted a trash pull at **TARGET RESIDENCE**. Your affiant found multiple items of indicia showing FAY and M. FAY residing at **TARGET RESIDENCE**, including multiple pieces of mail addressed to each of them. Your affiant also recovered a corner tied baggie which your affiant knows from training and experience to be a common means to store and transport illegal narcotics. There was no residue inside the baggie which could be tested. *See* Figure 7 below. Your affiant found four empty single dose baggies of Buprenorphine and Naloxone subungual film, 8mg/2mg. This prescription medication is used to treat opioid addiction. *See* Figure 8 below.



(Figure 7)

10



(Figure 8)

23.     On February 9, 2026, your affiant reviewed body camera footage from the West Allis Police Department. The footage showed that on August 25, 2025, officers went to **TARGET RESIDENCE** to investigate a shoplifting incident related to a juvenile son of M. FAY. While at the residence Officers spoke with FAY who verbally identified himself. The video showed the same male from Figure 1 and was consistent with the other photographs of FAY. *See* Figure 9 for a still shot of the body camera footage.

11



(Figure 9)

Also captured on the body camera footage was a "bong" sitting on the kitchen table. A "bong" is a device used to smoke marijuana, along with multiple other items of drug paraphernalia. *See* Figure 10 below.



(Figure 10)

24.    Your affiant has reviewed body camera footage of a traffic stop conducted by West Allis Police Department on January 13, 2026. The traffic stop was on a silver Chevy Impala with VIN 2G1WB58KX69416782 and had expired registration. The footage showed FAY was the driver and sole occupant. FAY provided his driver's license to the officer and stated the vehicle belonged to his wife. The officer asked FAY if he still lived "on 57th". Fay replied, "Yup, that's where I just left." FAY provided the officer with phone number 414-736-5216, a phone number serviced by Boost Mobile and whose service data is controlled by AT&T and Dish Wireless LLC. *See* Figure 11 below.

13



(Figure 11)

25.  Your affiant reviewed law enforcement databases and found the phone number assigned to FAY was 414-736-5216. As described in paragraph 14 above, FAY provided this phone number to West Allis Police on January 13, 2026. This traffic stop was nine days after your affiant was provided the tip. The phone number was determined to be serviced by Boost Mobile LLC. On April 20, 2026, Boost Mobile LLC provided records showing that phone number 414-736-5216 has been subscribed to FAY from April 27, 2023, to the present.

26.  On March 9, 2026, your affiant applied for and received a federal search warrant for **TARGET RESIDENCE** and FAY's person. *See* EDWI Case No. 26-M-315 (SCD). Due to your

14

affiant not being able to establish a pattern of life for FAY, to ensure that FAY was present at **TARGET RESIDENCE** when warrant was executed and to address officer safety concerns, the warrant was returned not executed.

27. On April 27, 2026, your affiant applied for and received a federal search warrant for cellular device location "ping" data for FAY's cellular device assigned phone number 414-736-5216. *See* EDWI Case No. 26-931M (NJ). Upon reviewing the data, your affiant determined FAY worked at Quad Graphics located at W224N3322 Duplainville Road, Pewaukee, WI 53072. FAY appears to leave his residence at approximately 7:30 AM and arrive at Quad Graphics at 7:45 AM on days he works. FAY leaves Quad Graphics at approximately 4:00 PM and generally returns to West Allis.

28. On April 29, 2026, your affiant observed "ping" location data which showed FAY at Quad Graphics in Pewaukee. Your affiant went to that location and observed the silver in color Chevy Impala bearing WI license plate ALU2445 parked in the Quad Graphics parking lot. This vehicle has a distinctive "IMPALA" decal in large white letters along the top of the front windshield and "CHEVY" along the top of the rear windshield.

29. On May 6, 2026, your affiant conducted surveillance at Quad Graphics in Pewaukee. At 7:45 AM, your affiant observed FAY arrive driving the above Chevy Impala and park in the Quad Graphics parking lot. Your affiant observed FAY exit the vehicle and enter the building. Subsequent cellular device pings showed FAY's device also at Quad Graphics.

30. On May 7, 2026, your affiant observed the ping location to show FAY at the Quad Graphics in Pewaukee. Your affiant went to that location at approximately 2:00 PM and observed the same Chevy Impala described above parked in the lot.

15

31.     Case agents believe FAY is illegally in possession of multiple firearms, after having been convicted of a felony, and that FAY is currently utilizing the **TARGET RESIDENCE** as a narcotics storage and distribution location, in addition to the storage of narcotics-related proceeds. Case agents further believe that FAY utilizes the silver Chevy Impala bearing WI license plate ALU2445 and that evidence of firearm possession and use, as well as illegal drug possession, distribution and use exists on his cellular device. This belief is supported by information in the anonymous tip, and case agents' observations during trash pulls, physical surveillance, and review of law enforcement video at **TARGET RESIDENCE**.

32.     Based upon their training and experience and the investigation to date, case agents are aware that drug traffickers commonly maintain evidence of their drug trafficking, including drug ledgers, financial documents, U.S. currency, cellular telephones, customer contact information, jewelry or other items purchased with drug proceeds, in their homes or "stash" houses. Case agents are also aware it is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time. Because narcotics trafficking generates large sums of cash, it requires the keeping of detailed records as to the distribution of narcotics as well as the laundering of the proceeds. Such records also typically provide evidence as to the identity of additional criminal associates who are facilitating the laundering of the narcotics proceeds on behalf of the organization. These records, unlike controlled substances, are often maintained for long periods of time, even several years, based on case agents' training and experience. It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses or personal residences.

16

33.     Case agents believe, based on the facts contained within this affidavit, that there is probable cause to believe that the location described in paragraph 3 and more fully described in Attachment A, have been and are continuing to be used as part of a conspiracy to possess with intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1). Based on the foregoing, there is probable cause to believe that located within the location described in paragraph 3 above and more fully described in Attachment A, there is evidence pertaining to the fruits, instrumentalities, and proceeds of drug trafficking or possession of firearms by a felon, all of which are detailed more specifically in Attachment B, Items to be Seized.

## ATTACHMENT A

### Property to Be Searched

a.  The premises located at **1356 S. 57th Street, West Allis, WI 53214,** more fully described as a two-story, two-family residence with red brick. The front door is accessed by brick and paved steps. The numerals "1354" appear in black lettering above the mailbox directly south of the front south door. The numerals "1356" appear above a white mailbox on the southwest corner of the residence facing the street. The entrance door for 1356 is at the rear of the house accessible by a paved walkway on the south side of the residence.  A detached garage is located on the alley behind the residence.  The search is to include any outbuildings or garages associated with 1356 S. 57th Street, West Allis, WI.

b.  The silver Chevy Impala bearing WI license plate ALU2445, and VIN 2G1WB58KX69416782.

c.  The person of Richard FAY.

## ATTACHMENT B

### Particular Things to be Seized

1. All records, documents, evidence, and information relating to violations of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Section 841(a)(1) involving Richard FAY, and others known and unknown, including, but not limited to, the following:

a. Firearms, firearm boxes, bipods, tripods, upper receivers, firearms accessories, and ammunition;

b. Receipts and records related to the purchase or sales of firearms, firearms accessories, and ammunition;

c. Controlled substances;

d. Paraphernalia associated with the manufacture and distribution of controlled substances, including scales, measuring devices, weighing devices, packaging materials, and containers, bags, or boxes to hold or transport controlled substances;

e. Proceeds of drug trafficking activities, such as currency, crypto currency (in any format, including but not limited to wallets (digital and paper), public keys (addresses), private keys, and recovery seeds), precious metals, financial instruments, jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of drug trafficking activities;

f. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances;

e. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, or times when controlled substances were obtained, transferred, sold, distributed, or concealed;

f. Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, documents and other items or lists

2

reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

g. Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities;

h. Records and information related to travel for purposes of drug trafficking, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel, and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel;

i. Indicia of occupancy, residency, or ownership of the premises and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease, or rental agreements, addressed envelopes, escrow documents, and keys;

j. Photographs, videotapes, or other records of assets, co-conspirators, or controlled substances;

k. Cellular telephones, text messaging systems, desktop computers, laptop computers, tablets, other communication devices, and electronic storage devices (including but not limited to thumb drives, compact discs, DVDs, floppy discs, external hard drive, surveillance cameras, security devices, and security systems), and any and all records associated with and stored within such communications services or storage devices;

l. Records and information relating to a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance;

m. Records and information relating to the distribution, manufacture, dispensing, or possession with the intent to manufacture, distribute, or dispense a controlled substance;

n. Records and information relating to the identity or location of the subjects listed above;

o. Records and information about customers, including lists of customers and related identifying information;

p. Records and information relating to the types, amounts, and prices of drugs imported, trafficked, and distributed as well as dates, places, and amounts of specific transactions; and

3

q.      Records and information relating to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

2.      Computers or storage media used as a means to commit the violations described above.

3.       For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

4

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

5